# The United States Court of Appeals
## For The Third Circuit

No. 24-1594

ANDY KIM, et al.,

*Plaintiffs/Appellees,*

v.

CHRISTINE GIORDANO HANLON,
in her capacity as Monmouth County Clerk, et al,

*Defendants/Appellants.*

On Appeal from the United States District Court for the District of New Jersey
No. 3:24-cv-01098

Honorable Zahid N. Quraishi, United States District Judge

**BRIEF OF AMICUS CURIAE IN OPPOSITION TO THE EMERGENT MOTION FOR STAY PENDING APPEAL**

**JARDIM MEISNER SALMON SPRAGUE & SUSSER, P.C.**
Scott D. Salmon
30B Vreeland Road, Suite 100
Florham Park, NJ 07932
T: (973) 845-7640
F: (973) 845-7645
ssalmon@jmslawyers.com

*Counsel for* Amicus Curiae, *Ravi Bhalla, Jerry Speziale, and Patricia Campos-Medina*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

INTEREST OF AMICI CURIAE ....................................................................... 1

PRELIMINARY STATEMENT ........................................................................ 3

ARGUMENT ..................................................................................................... 4

    I.    STANDARD OF REVIEW ...................................................... 4

    II.    MOVANTS CANNOT SHOW ANY HARM FROM THE PRELIMINARY INJUNCTION ................................................. 5

    III.    BALANCING OF THE HARMS AND THE PUBLIC INTEREST LEAN TOWARD PLAINTIFFS ............................................. 10

CONCLUSION ................................................................................................ 13

CERTIFICATIONS OF COUNSEL ................................................................ 14

CERTIFICATE OF SERVICE ........................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Donald J. Trump for President, Inc. v. Sec'y Pa.*,
  830 F. App'x 377 (3d Cir. 2020) ............................................................. 13

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987) ........................... 4

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999) ............... 4

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989) .............. 4

*Moteles v. University of Pennsylvania*, 730 F.2d 913 (3d Cir. 1984) ............................. 5

*Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558 (3d Cir. 2015) ..................... 4, 5

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984) ....................... 5

*Spacemax Int'l LLC v. Core Health & Fitness, LLC*,
  2013 U.S. Dist. LEXIS 154638 (D.N.J. Oct. 28, 2013) ........................................... 4

# INTEREST OF AMICI CURIAE[1]

Ravi Bhalla is the Mayor of the City of Hoboken and a candidate for the United States House of Representatives in New Jersey's 8th Congressional District.

Jerry Speziale is the Public Safety Director for the Police and Fire Departments of the City of Paterson and a candidate for Sheriff of Passaic County. Mr. Speziale previously served as Sheriff of Passaic County from 2001 to 2010.

Dr. Patricia Campos-Medina is a nationally recognized labor and political leader, the Executive Director of the Worker Institute at Cornell University, and a candidate for the United States Senate.

All three *amici* have qualified to appear on their respective ballots in the upcoming June 4, 2024 primary election for the Democratic Party. However, they have not received the "county line," and thus, will be forced to bracket and associate with other candidates to either obtain preferential ballot placement in any county ballot on which they will appear, or to avoid being featured alone in "Ballot Siberia." Each of the three will suffer irreparable harm if the District Court's preliminary injunction is stayed, as they will be competing against the county line, which has a statistically significant effect in terms of the benefits that flow to endorsed candidates. Each will be forced to sit in a statistically less advantageous position on ballots and the Court would be perpetuating an election process that is demonstrably unfair, uneven, and

---

1. All parties have consented to this filing. *See* Fed. R. App. P. 29(a)(2). No party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief. No person other than *amici* and their counsel contributed money related to the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

unconstitutional. As such, *amici* have a stronger interest in ensuring that the preliminary relief remains in effect—and will suffer the greatest harm should it be stayed—than nearly any other party in the litigation.

Moreover, the consequences of a stay of the District Court's preliminary injunction affects every election on the ballot, from the duly elected members of the Democratic Party's County and Municipal Committees all the way up to President of the United States. In other words, plaintiffs are not the only candidates affected by the injunction, and given the public interest at stake, and the Court's obligation to consider that interest, as discussed herein, support consideration of how its decision will affect at least some of those other candidates. *Amici* include leading candidates for the U.S. Senate, House of Representatives, and County Sheriff. Their voices are distinctly relevant to any balancing analysis of the harm imposed by injunctive relief, and as such, should be considered by the Court in rendering its decision.

## PRELIMINARY STATEMENT

Chico Marx, dressed up as Groucho Marx and trying to hoodwink another character in the 1933 classic movie, "Duck Soup," famously exclaimed, "Who ya gonna believe, me or your own eyes?" That is the question presented to the Court by way of the emergent motion for a stay of the District Court's preliminary injunction.

In essence, the movants ask this Court to take their word that changing to a different ballot design, one used in every election in every state in our nation aside from New Jersey, is both impossible to do and will cause significant voter confusion. They rely on hearsay, supposition, and vague speculation to do so.

In contrast, it is undisputed that the office-block ballot design authorized by the District Court is already in use in every single state other than New Jersey. Plaintiffs offer the testimony of the movants' own witnesses to show that an office-block ballot design may be quicker to incorporate than the current county line ballot design. And plaintiffs offer expert testimony to show that an office-block ballot allows for a fairer ballot that does not discriminate against candidates. Despite movants' best efforts to undermine these facts, they are incontrovertible.

In other words, the Court should trust its own eyes and the plaintiffs' facts over the movants' unsupported, self-serving, and desperate statements, and deny the motion for stay pending appeal.

## ARGUMENT

### I. Standard of Review

With an unending supply of parties to this litigation, the standard of review for a stay of a preliminary injunction pending appeal is undoubtedly well-trod and does not need to be repeated at length. Simply stated, courts must consider four factors: (1) whether the movant has made a strong showing of the likelihood of success on the merits; (2) will the movant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest. *See Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 565 (3d Cir. 2015). Of the four elements, *amici* choose to focus on the balancing of the equities: a comparison of the movants' alleged irreparable harm to others with an interest in the litigation, as well as the public interest.

As a threshold matter, movants must show irreparable harm, which is defined as "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The harm "must be of a peculiar nature, so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

That said, "[e]stablishing a ***risk*** of irreparable harm is not enough." *Ibid.* (emphasis added). "Mere speculation as to an injury that will result, in the absence of any facts supporting such a claim, is insufficient to demonstrate irreparable harm." *Spacemax Int'l LLC v. Core Health & Fitness, LLC*, 2013 U.S. Dist. LEXIS 154638, at *5 (D.N.J. Oct. 28, 2013) (*citing Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 327-30 (1999)). And, as a general matter, personal inconvenience alone

4

will not establish irreparable injury in federal court. *See Moteles v. University of Pennsylvania*, 730 F.2d 913 (3d Cir. 1984).

The Third Circuit has said that when balancing the harms, courts must weigh the likely harm to movants against the likely irreparable harm[2] to the non-movants. *Revel*, 802 F.3d at 569. And when an "order granting or denying a preliminary injunction will have consequences beyond the immediate parties," courts must also consider the public interest in granting a stay of that injunction. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 388 (7th Cir. 1984).

## II.  Movants Cannot Show Any Harm from the Preliminary Injunction

Two parties, or groups of parties, have moved for a stay of the preliminary injunction pending appeal. First, the County Clerks for Atlantic, Bergen, Camden, Cape May, Cumberland, Essex, Gloucester, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Passaic, Somerset, and Union Counties (collectively, the "County Clerks"). The County Clerks for Ocean, Salem, Sussex, and Warren Counties have declined to file or participate in this appeal, and the County Clerks for Burlington and Hudson Counties have since withdrawn their respective appeals. (ECF Nos. 208, 209). And second, the Camden County Democratic Committee ("CCDC") also has moved for a stay of the preliminary injunction.

The County Clerks cannot demonstrate any harm, much less any irreparable harm. Indeed, the only harm identified by them is speculative at best but could more accurately be described as an inconvenience. For example, Christine Giordano

---

2. Since this issue only arises in the context of the granting of injunctive relief, the non-movant has already demonstrated their own likelihood of irreparable harm to the underlying court, and so their own injury should be assumed.

Hanlon, the Monmouth County Clerk, provided hearsay testimony that a printer used by Monmouth County informed her that using an office-block ballot style for the primary was "unchartered territory." (Tr. 359:4-23). Of course, even assuming *arguendo* that this is true, being in unchartered territory does not, without more, constitute irreparable harm. It simply signals that New Jersey should—heaven forbid—evolve with the times, as every other state has done. But it critically does not mean that it is impossible for Monmouth County to comply. Similarly, Ms. Hanlon testified that she had another hearsay conversation with an unnamed representative of Election Systems & Software ("ES&S") about changing the ballot style, and they responded that "No, that would be bad." (Tr. 361:25-362:24). Even if the Court were to consider such hearsay testimony—which it should not—the statement lacks any evidentiary value. The situation simply being "bad," whatever that means, has no relevance on if it is possible to comply with the District Court's order. That is what the District Court also held, stating that Ms. Hanlon's "testimony appeared to be based more on speculation than fact," as "saying she was not sure [the change in ballot designs] could be done" does not rebut expert testimony showing that a change in ballot designs unquestionably can be done, and fast. (ECF No. 194, pg. 27).

The County Clerks cite these examples as being some type of proof of the type of irreparable harm that they will suffer if a stay is not issued. (Document 10, pg. 11). If the Court is wondering what the connection is between these distressingly vague statements by third parties and the irreparable harm that would be suffered by the County Clerks, *amici* would say that the Court is not alone: the County Clerks never explain how they are harmed, in any way, by the preliminary injunction, and so they

6

cannot possibly meet this element required to obtain a stay pending appeal. The County Clerks' argument in this respect boils down to the state's interest in "providing a manageable and understandable ballot, and ensuring an orderly election process," (Document 10, pg. 17), but they fail to explain why a ballot design used in 49 states cannot be presumptively viewed as manageable and understandable.[3]

In fact, the County Clerks cite to "evidence that ES&S and Dominion, the two companies providing voting machines and ballot-counting software to New Jersey counties, cannot process the multi-column and/or multi-page office-block ballots that the Injunction may require." (Document 10, pg. 16). But this "evidence" is significantly undercut, if not completely eviscerated, by the actions of the Burlington, Hudson, Ocean, Salem, Sussex, and Warren County Clerks, who either declined to appeal or have withdrawn those appeals. Notably, Burlington uses Dominion, and Hudson—which has the fourth-most registered members of the Democratic Party of any county—uses ES&S. (ECF No. 95, pg. 76). As these County Clerks apparently believe that they will be able to comply with the District Court's injunction, it is not credible to believe that the other County Clerks cannot do so as well.

It is also worth noting that the County Clerks, despite their posturing in this application, are already taking the steps necessary to comply with the District

---

3. It should be noted that it is not the County Clerks' job to defend the laws of the State of New Jersey and they cannot claim the mantle, and the burden, of doing so. Rather, that is the duty of the New Jersey Attorney General, who found the relevant statutes so indefensible to the interests of the voters that he not only stated as such, but actively argued against their legality. (ECF No. 149).

Court's order, and there is little reason to believe that they will not be able to do so. In fact, Christopher J. Durkin, the Essex County Clerk, recently tweeted:[4]

> I am in favor of block ballot voting. I am confident Essex County will conduct a fair and free election. Our ballots will be clear and concise to voters. The voting systems we have in Essex County are the best in New Jersey.

Chris Durkin (@ChrisJDurkin), Twitter (Mar. 31, 2024, 9:37 PM), https://twitter.com/ChrisJDurkin/status/1774612051970638150.

While Mr. Durkin subsequently tweeted that some unidentified County Clerks are "concerned" regarding "their systems' ability to conduct such an election in time with the federal deadlines," the plain implication of his first tweet was that it would be done if needed, and that it would be done in a "clear and concise" manner.

Similarly, Paula Sollami Covello, the Mercer County Clerk, tweeted that while she would refrain from further comment due to the ongoing litigation, Mercer County "is also currently preparing as best as possible to comply with [the District Court's] order." Paula Sollami Covello (@MercerClerk), Twitter (Apr. 1, 2024, 2:34 PM), https://twitter.com/MercerClerk/status/1774867850542395439.[5]

---

4. While Twitter is now officially known as "X," given Twitter's common usage and worldwide saturation into our lexicon, much like Kleenex or Q-Tip, it would be confusing for *amici* to refer to it as anything else, even if technically inaccurate. *See* Kate Conger, *So What Do We Call Twitter Now Anyway?*, NEW YORK TIMES, Aug. 3, 2023, https://www.nytimes.com/2023/08/03/technology/twitter-x-tweets-elon-musk.html.

5. While *amici* are not delving into a deep discussion of the movants' likelihood of success on the merits of the underlying appeal and leave that to the plaintiffs, we do note that it is not entirely clear whether movants themselves believe that they are likely (or even want to) succeed. Specifically, Mr. Durkin tweeted that "Many county clerks in New Jersey are concerned…not on the constitutionality of this

Any harm to the County Clerks is therefore speculative at best and likely monetary at worst, should they have to pay more money to their election systems vender, (ECF No. 60-1, ¶ 22, stating that compliance would "likely" require the use of a vendor, "which will incur additional costs"), or printer, (Tr. 366:1-5, indicating that there was an indeterminate cost associated with the change to the ballot design). That is why perhaps the most curious and telling omission from the County Clerks' submission is any reference to the admission of their own printer, David Passante, who acknowledged that he could "one hundred percent" find a way to get it done if ordered to do so by the District Court. (Tr. 282:12-283:5).

Similarly, the CCDC's cannot make any claim of irreparable harm, nor do they even bother to try.[6] Indeed, the word "harm" does not appear even once in their

---

ruling but based on the late timing . . . ." Chris Durkin, Twitter (Mar. 31, 2024, 9:39 PM), https://twitter.com/ChrisJDurkin/status/1774612501499441321. Ms. Sollami Covello tweeted that "we," referring to "many other county clerks" were appealing "the 'injunction'" based on its timing "and not his ultimate ruling on the 'line.'" Paula Sollami Covello, Twitter (Apr. 1, 2024, 2:32 PM), https://twitter.com/MercerClerk/status/1774867492663357528. If movants are not challenging the underlying decision by the District Court, or even support it, in the case of Mr. Durkin, then they cannot possibly show a likelihood of success on the merits since they are not challenging the merits at all.

6. It should be noted that three County Clerks are up for reelection this year, in Camden, Cumberland, and Salem Counties. Joseph A. Ripa, the Camden County Clerk, has been endorsed by the CCDC. If the stay is granted, he will be placed on the county line and given preferential ballot placement. If the stay is denied, since the CCDC is not bracketed with a Senate candidate, they will be in "Ballot Siberia" and placed no higher than Column D. *Amici* submits that this interest might explain the CCDC's zeal to intervene in the case and is emblematic of the conflicts associated with the County Clerks' defense of the county line system.

brief. (Document 4-1). That is because the CCDC cannot show any peculiarized harm that they will suffer since the CCDC will still retain the right to associate with candidates of their choosing through the awarding of their slogan. (Tr. 61:8-23).

Since neither the County Clerks nor the CCDC can show any type of harm to them by a denial of their application for a stay pending appeal, it must be denied.

### III.  Balancing of the Harms and the Public Interest Lean Toward Plaintiffs

At best, the County Clerks and CCDC have indicated that they will be inconvenienced by the District Court's decision. It should go without saying, and yet we will say it anyway, that an inconvenience does not meet the irreparable harm standard required to issue the extraordinary relief that is a stay pending appeal.

In context, then, there is simply no comparison when weighing the harms between the movants and either the plaintiffs or *amici*. Plaintiffs have ably argued, and continue to argue, that they will be irreparably harmed should a stay be granted, and the county line system used again, and the District Court found that they met this burden in multiple respects. (ECF No. 194, pgs. 35-41).

But plaintiffs are not the only candidates harmed here: that harm extends to every candidate not selected by their respective county leaders and given preferential placement on the county line. Even those who do receive the line may be harmed when it means they cannot associate with other like-minded candidates or when they are forced to associate with those with whom they do not want to be connected to, simply so they can get preferential ballot placement. As plaintiffs demonstrated by way of expert testimony, "the impact on a candidate who fails to secure the county line or the first ballot position is consequential," and failure to receive either one will

always negatively impact candidates by anywhere between 3.9 percentage points to 27.8 percentage points, a substantial difference. (ECF No. 194, pgs. 37-38).

*Amici* are in a similar boat as Plaintiffs Schoengood and Rush, and in a worse position than Plaintiff Kim since they do not have the county lines in any county in which they appear. Neither Mr. Bhalla nor Mr. Speziale are, on their own, entitled to even try for the top ballot position, and without bracketing, are limited to the fourth-best ballot position (at best) since they are not candidates for the Senate. And while candidates who are given the line do not need to do anything else other than submit their nominating petition paperwork, candidates who do not receive the line must spend considerable time, energy, and resources to build such a line.

It is worth noting that while the county line system results in inequitable benefits to the candidates who have received the line, it is also, in many instances, based upon an inequitable system by which the political parties select their chosen candidates.

In the case of Mr. Bhalla, the endorsement awarded by the Hudson County Democratic Organization that results in being given the county line is determined solely by the County Chairman, Anthony Vainieri, Jr. *See* David Wildstein, *As Judge Prepares to Decide Future of the Line, Vainieri Highlights 'No Process' Process*, NEWJERSEYGLOBE, Mar. 15, 2024, https://newjerseyglobe.com/local/as-judge-prepares-to-decide-future-of-the-line-vainieri-highlights-no-process-process/.

In the case of Mr. Speziale, he was offered the county line by the Passaic County Democratic Committee, but only if he agreed to allow the County Chairman, John Currie, to name the undersheriffs and make all personnel and financial decisions for the department. *See* David Wildstein, *Six Democrats Seek Party Backing for Passaic*

11

*Sheriff, But Speziale Isn't One of Them*, NEWJERSEYGLOBE, Mar. 6, 2024, https://newjerseyglobe.com/local/six-democrats-seek-party-backing-for-passaic-sheriff-but-speziale-isnt-one-of-them/.

And in the case of Dr. Campos-Medina, her exclusion from the process consists not just of words, but was actually videotaped. Indeed, Dr. Campos-Medina was physically barred from attending the CCDC's convention at which they awarded their line. *See* Eric Kiefer, *NJ Senate Candidate Denied Entry at Democratic Convention*, PATCH, Mar. 19, 2024, https://patch.com/new-jersey/newarknj/nj-senate-candidate-denied-entry-democratic-convention-video.

No credible democracy can claim to be built on such a system, and so the public interest is helped by the demise of the county line system. Political parties will still be entitled to endorse candidates and run them under their chosen slogans, but going forward, they will not be able to exclude candidates from the process and receive calculable and verifiable benefits to their superior (and guaranteed) placement on the ballot. Consequently, if the preliminary injunction remains in effect, *amici* will have an equal shot at drawing preferential ballot placement to any other candidate. They would not be at risk of being placed in "Ballot Siberia" if they cannot arrange an agreement with a Senate candidate to bracket and associate with them. For candidates to finally receive a fair shot at being elected will always be in the public interest and the Court should consider this interest in denying stay pending appeal.

## CONCLUSION

This Court has previously held that it is axiomatic that "[v]oters, not lawyers," choose their elected officials. *Donald J. Trump for President, Inc. v. Sec'y Pa.*, 830 F. App'x 377, 391 (3d Cir. 2020). Indeed, "Ballots, not briefs, decide elections." *Ibid.* In the final analysis, the plaintiffs that brought this action, and the *amici* who support them, are simply seeking a fair ballot so all candidates have a fair shot at winning the ultimate prize in our democracy. Denying a stay in this case means that New Jersey, for the first time in more than half a century, finally has the same opportunity that every other state in our nation enjoys in every election: a free and fair election decided by voters casting ballots, not one pre-determined by party bosses. At long last, the people of New Jersey deserve that opportunity. The stay should be denied.

**JARDIM MEISNER SALMON SPRAGUE & SUSSER, P.C.**

By: /s/Scott D. Salmon
SCOTT D. SALMON
30B Vreeland Road, Suite 100
Florham Park, New Jersey 07932

*Counsel for* Amicus Curiae, *Ravi Bhalla, Jerry Speziale, and Patricia Campos-Medina*

## CERTIFICATIONS OF COUNSEL

1. I, Scott D. Salmon, certify under penalty of perjury that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. This brief complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,529 words.

3. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced 14-point serif font (Equity), using Microsoft Word.

4. Pursuant to Local Rule 31.1(c), the text of the electronic version of this document is identical to the text of the paper copies filed with the Court.

5. Pursuant to Local Rule 31.1(c), Windows Defender, Version 1.407.905.0, has been run on this electronic file and no virus was detected.

Dated: April 2, 2024        By: /s/Scott D. Salmon
                                SCOTT D. SALMON

## CERTIFICATE OF SERVICE

I hereby certify that, on April 2, 2024, I filed the foregoing using this Court's CM/ECF system, which effectuated service on all parties.

Dated: April 2, 2024         By: /s/Scott D. Salmon
                                 SCOTT D. SALMON