Appeal Nos. 24-1593, 24-1594, and 24-1602

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

ANDY KIM, in his personal capacity as a candidate for U.S. Senate, *et al.*,

Plaintiffs-Appellees

v.

CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk,

Defendants-Appellants

Paula Sollami Covello, Christopher J. Durkin, Joseph J. Giralo, Ann Grossi, Christine G. Hanlon, James N. Hogan, John S. Hogan, Danielle Ireland-Imhof, Mary H. Melfi, Steve Peter, Nancy J. Pinkin, Joanne Rajoppi, Celeste M. Riley, Joseph Ripa, and Rita Rothberg, Defendants-Appellants in No. 24-1593

Camden County Democratic Committee, Intervenor-Appellant in No. 24-1594

Scott M. Colabella, Defendant-Appellant in No. 24-1602

On appeal from an Order Granting Preliminary Injunction of the United States District Court for the District of New Jersey, Civ. A. No. 3:24-cv-1098-ZNQ-TJB Hon. Zahid N. Quraishi, presiding

## PLAINTIFFS-APPELLEES' RESPONSE TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL

Flavio L. Komuves
Brett M. Pugach
WEISSMAN & MINTZ
220 Davidson Ave.
Somerset, NJ 08873
732.563.4565
fkomuves@weissmanmintz.com
bpugach@weissmanmintz.com

Yael Bromberg
BROMBERG LAW LLC
43 West 43rd Street, Suite 32
New York, NY 10036-7424
212-859-5083
ybromberg@bromberglawllc.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION ........................................................................1

FACTUAL BACKGROUND ..........................................................3

STANDARD OF REVIEW ...........................................................8

I.    THIS COURT SHOULD NOT CONSIDER ARGUMENTS THAT
      APPELLANTS FAILED TO RAISE BELOW ON THEIR
      APPLICATION  FOR  A  STAY  BEFORE  THE
      DISTRICT COURT ...........................................................9

II.   APPELLANTS CANNOT DEMONSTRATE THEY
      ARE LIKELY TO SUCCEED ON THE MERITS OF
      THE APPEAL ..................................................................9

      A.    The federal court's review of the constitutionality
            of state laws was rightly conducted independently
            of prior state court rulings..........................................9

      B.    The District Court rightly concluded the
            challenged statutes violate the Elections Clause
            and First and Fourteenth Amendments, and
            Appellants put forth no evidence to demonstrate a
            likelihood of success on the merits ..........................12

III.  APPELLANTS  CANNOT  DEMONSTRATE  IRREPARABLE
      INJURY  IN  THE  ABSENCE  OF  A  STAY,  OR
      SUBSTANTIAL HARM TO OTHERS, OR THAT THE
      PUBLIC INTEREST DISFAVORS AN INJUNCTION....................16

      A.    The district court correctly concluded that its
            injunction for the 2024 primary could be feasibly
            implemented by the defendant Clerks and did not
            violate *Purcell* ..........................................................16

B.    The relevant date for feasibility analysis is April 20, not April 5 ........................................................... 19

C.    The district court's clarification order does impact the analysis ................................................................ 20

CONCLUSION ........................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388 (3d Cir. 2012) ................10

*Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) .............................................15

*Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2013 WL 1277419, (3d Cir. Feb. 8, 2013) ........................................8

*Conforti v. Hanlon*, No. 20-08267 (D.N.J.) .................................................................5

*Cook v. Gralike*, 531 U.S. 510 (2001) ......................................................................16

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) ....................................11

*Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989) ..............................11

*Guyton v. PECO Inc.*, 770 Fed. Appx. 623 (3d Cir. 2019) .........................................9

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) ......................................................8

*Kos Pharm. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) .........................................5

*New Jersey Democratic Party, Inc. v. Samson*, 175 N.J. 178 (2002) ......................19

*Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329 (6th Cir. 2016) ...........................................................................................................................11

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ............................................................*passim*

*Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331 (3d Cir. 2022) .....................................................................................................................8

*Quaremba v. Allan*, 67 N.J. 1 (1975) ........................................................................10

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ........................................9

*Schundler v. Donovan*, 377 N.J. Super. 339 (App. Div.), *aff'd*, 183 N.J. 383 (2005) ..................................................................................................................11

*Surrick v. Killion,* 449 F.3d 520 (3d Cir. 2006)........................................................10

*United States v. Cianfrani*, 573 F.2d 835 (3d Cir. 1978)............................................8

*University of Texas v. Camenisch,* 451 U.S. 390 (1981) ...........................................5

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ................................................................................................................11

## Statutes

N.J.S.A. 19:13-12...................................................................................................19

N.J.S.A. 19:23-17...................................................................................................12

# INTRODUCTION

New Jersey's primary ballot designs are a national outlier. All other states organize their primary ballots around the office sought, with almost all using an "office-block" display, *i.e.*, with candidates for a given office listed in a single column under (or to the side of) the office for which they were nominated. In contrast, New Jersey designs primary ballots in a gridded format that visually links candidates running for one office with those pursuing a different one. A core feature of this ballot is the "county line," a grouping of candidates endorsed by political party leadership that rewards them with favored ballot position and visual cues nudging voters to support them. Candidates chosen for the county line receive immense electoral advantages over their opponents, who are further disadvantaged by being placed in obscure portions of the ballot known as "ballot Siberia," being excluded from drawing for first ballot position, and being stacked in a column with their opponents or other candidates with whom they do not wish to associate.

This is a generally known fact in New Jersey political circles, and scientific evidence bolstering this was presented in studies and testimony before the District Court, during extensive briefing, declarations submitted by the litigants, and a nine-hour evidentiary hearing. In addition to the visual presentation by which the primary ballot is organized around the county line, New Jersey separately allows candidates

to communicate the endorsements of political party leadership on the ballot through slogans featuredalongside each candidate, which are not challenged here.

Plaintiffs-Appellees, current Congressman Andy Kim, a U.S. Senate candidate in the 2024 primary election, along with Sarah Schoengood and Carolyn Rush, both Congressional candidates, commenced this action a full 100 days before New Jersey's 2024 primary, and two months from when the first ballots are slated to be sent to mail-in voters. Plaintiffs' Verified Complaint sought, among other things, a preliminary injunction barring the use of the confusing, discriminatory, and outlier county-line ballot in the June 2024 primaries.

In a thorough opinion, the District Court held that the government-sponsored county line ballot, implemented by 19 of New Jersey's 21 county clerks, is discriminatory and unconstitutional because of large, and potentially outcome-determinative, effects in primary races and the corresponding burden that the "substantial benefit" places on the free exercise of candidates' right to (and right not to) associate. The District Court also agreed with Plaintiffs' argument that the county line "is improperly influencing primary election outcomes" and exceeds the State's right to regulate elections pursuant to the Elections Clause.

Furthermore, the litigants presented competing testimony on the ease and feasibility of implementing the office-block ballot for the June 2024 primaries. Judge Quraishi, after reviewing written expert reports and certifications, and hearing

2

directly from the witnesses, agreed with Plaintiffs and their experts, who showed that not only *could* office-block ballots be easily implemented, they in fact *had* been implemented by the defendant county clerks. Thus the *Purcell v. Gonzalez*, 549 U.S. 1 (2006) ("*Purcell*") and feasibility issues Defendants now repeat on appeal were not simply a collateral issue that was not argued or considered below. Rather, these issues were central to the parties' briefs and certifications, but also addresses in the expert reports and testimony, and were actually tried before the Court in a 9-hour evidentiary hearing.

If Defendants' stay application is granted, New Jersey voters will be forced to vote yet again using a ballot that violates multiple provisions of the U.S. Constitution, including the right to vote, equal protection, freedom of association, and the Elections Clause. They will be forced to vote on a primary ballot that a federal court has deemed to be unconstitutional, and which the New Jersey Attorney General has separately found to be unconstitutional and advancing no state interest (DE149 (AG Letter)). And because Defendants have not come close to meeting their burden to obtain a stay, this Court should deny their stay application.

## FACTUAL BACKGROUND

Plaintiffs' Verified Complaint, supported by four expert witness reports, was filed February 26, 2024. (DE1.) The Complaint and annexed materials showed that New Jersey's unique rules for designing ballots, followed in 19 of its 21 counties,

gave unfair advantages to a ticket of candidates favored by party leadership.[1] Ballot position and ballot design are extremely important factors to electoral success, and Plaintiffs' experts (DE1, 1-2, 1-3, 1-4) showed in multi-year, multi-election studies, that the county line ballot format rewarded and benefited candidates on the line by outsized margins. (DE194 (Opinion), pp. 31, 32, 38). Additionally, another expert designed an experimental survey for the 2024 election and demonstrated that those results were consistent with historical studies. (DE1-2.)

The judge quickly set deadlines for opposition and reply papers, and scheduled an evidentiary hearing. (DE34.) Along with extensive briefing, the defense offered several declarations by county clerks, two voting machine vendors and a printer-vendor. (*E.g.*, DE45, 49, 54-1, 57-1[2], 59-1[3], 60-1, 61-2, 63-2, 65-1,[4] 151[5].) Plaintiffs filed reply papers (DE95, 97, 115), and the nine-hour evidentiary

---

[1] The mechanics of how the bracketing and ballot placement system work in NJ is set forth in detail in the Verified Complaint (DE1) and, other than Intervenor CCDC's confusion about the inability of unbracketed, non-pivot point candidates like Plaintiffs Rush and Schoengood to obtain first ballot position, is not disputed.

[2]      Certification by Warren County, who did not join the emergent request for stay to the District Court or the emergency motion for stay pending appeal.

[3]      Certification by Hudson, who has since withdrawn the stay motion and the appeal. (DE209). He will take steps to comply with the injunction. (*Id.*)

[4]      The Certification by vendor printer, was appended only to Burlington's opposition. Burlington withdrew her motion to stay (DE208) and from the appeal (Doc. 5) She will take steps to comply with the injunction. (*Id.*)

[5]      The Supplemental Certification by ES&S voting systems vendor was submitted by Burlington, who will comply with the injunction, *supra* n.4.

4

hearing took place on March 18. Although truncated due to time constraints,[6] both sides presented witnesses subject to cross examination, and ample opportunity was provided to defense to determine the sequence of witnesses. (DE194). On the eve of the hearing, the Attorney General wrote the Court (DE149), explaining that he would not defend the statutes because (1) of their unconstitutionality; (2) evidence presented in this case and in a prior litigation over the same issues pending before Judge Quraishi, *Conforti v. Hanlon*, No. 20-08267, or "in the multiple years since these state statutes were challenged" did not yield "reliable empirical evidence countering" the record evidence; and (3) rejecting that the ballot and bracketing system was "'necessary' to advance governmental interests".[7]

In the midst of the evidentiary hearing, seven *in limine* motions were filed (DE152-158, 159.) Supplemental certifications were filed by Plaintiffs' experts (DE168-171) in support of Plaintiffs' omnibus opposition (DE177.)

Following the hearing, one of the three opponents of Congressman Kim withdrew from the Senate race. However, his other two opponents, as well as the

---

[6]    *See  University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981); *Kos Pharm. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004).

[7]    While the District Court chose not to rely on the NJAG's letter, it is part of the record in this case, and this Court can take judicial notice of their nonparticipation in this case and that the NJAG took the same position in *Conforti*, where it was a party and subsequently moved to withdraw from defending the constitutionality of this system. (DE172; *Conforti* ECF 188.)

opponents of the two plaintiff Congressional candidates stayed in their respective races.[8] The Court requested briefing on this development.

On March 29,[9] the Court granted Plaintiffs' preliminary injunction, forbidding Defendants' use of several noxious practices that formed the spine of the county line ballot system, and requiring Defendants to use an office-block ballot for the upcoming election. (DE194, 195.) The judge did so after considering in detail the contentions of the county clerks that the change in ballot design might be too difficult to manage or might cause voter confusion, which he found to be largely unsupported, not credible, inconsistent, and/or contradictory. By contrast, Judge Quraishi found the Plaintiffs' experts gave credible and reliable testimony that it could be accomplished (and with minimal additional time/effort beyond any efforts already required under the status quo), a fact bolstered by extensive evidence that the clerks

---

[8]    The withdrawal of Mr. Kim's opponent had no effect whatsoever on the electoral burdens faced by the two Congressional candidate plaintiffs through the features of the primary ballot design laws. Moreover, setting aside the impact of the "weight of the line," whatever might be said of a Senatorial candidate's ability to compete on an equal and nondiscriminatory basis for the first ballot position, Congressional candidates like Schoengood and Rush who choose not to bracket or are denied bracketing *never* have that right. Further, Mrs. Murphy's withdrawal from the race did not alleviate Mr. Kim's associational rights injuries; rather, it exacerbated them. (DE183, 193.)

[9]    The Court's decision was issued almost a week prior to the ballot draw (the first date when the order of candidate positions on the ballot is determined, a deadline repeatedly relaxed by state courts in numerous instances where candidate eligibility or ballot placement is challenged). (*See* DE95, pp 8-9 (describing and citing DE95-1, Exhs. I to L (related state court orders).)

*already use and have used* office-block ballots with existing equipment, either on the entirety of a ballot, or on parts of a ballot. The clerks, in the Court's assessment, did not defeat this showing, and based on this evidence, following extensive briefings and record evidence, the Court determined that the relief requested in the stay was neither infeasible nor violative of *Purcell*.

The Court proceeded to find that the ballots imposed a severe burden on the interests of candidates and voters, which were not outweighed by the state interests being advanced by the clerks, which were "not especially compelling." Overall, the Court found Plaintiffs likely to succeed on the First and Fourteenth Amendments and Elections Clause, demonstrated irreparable harm, had not delayed, and the balance of the equities and public interest all counseled in favor of injunction.

The next day, at the request of a newly-appeared proposed intervenor, before the parties could be heard on the matter, the Court held that the injunction only applied to Democratic primaries. (DE207.) Finally, on April 1, the Court denied several motions for a stay pending appeal (DE198, 204, 205, 217), concluding that the narrow grounds advanced for a stay: feasibility, failure to join indispensable parties, and the applicability to the Republican primaries had already been canvassed, and did not warrant a stay. (DE219.) This appeal followed.

**STANDARD OF REVIEW**

A stay pending appeal is an "extraordinary remed[y]," *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978), "rarely granted," *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2013 WL 1277419, *1 (3d Cir. Feb. 8, 2013). Accordingly, this Court must determine that the appellant (1) "has made a strong showing of the likelihood of success on the merits;" (2) will "suffer irreparable injury absent a stay;" (3) that granting a stay would not "substantially harm other parties with an interest in the litigation;" and (4) "whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015). The "bar" thus "is set particularly high," *Conestoga*, 2013 WL 1277419, *1, and rests squarely on the Appellants, who plainly fail to clear it here.

The standard for overturning a preliminary injunction is itself a difficult one. In reviewing a decision granting a preliminary injunction, this Court "review[s] findings of fact for clear error, legal conclusions de novo, and the Court's decision to grant the preliminary injunction for abuse of discretion. *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 335 (3d Cir. 2022) (citation omitted). Here, the district judge had the benefit of reviewing all of Plaintiffs', Defendants', and *amici*'s legal and factual arguments, and the testimony from the evidentiary hearing. Being on the "frontline" of this litigation gave him a special familiarity with "the unique facts of [this] particular case," and allowed him to tailor the injunction

8

appropriately, with the benefit of all available information. It is thus uniquely appropriately here to apply a deferential, "abuse of discretion" in reviewing the grant of preliminary equitable relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 178 (3d Cir. 2017).

## I.    THIS COURT SHOULD NOT CONSIDER ARGUMENTS APPELLANTS FAILED TO RAISE BELOW

Appellants should not be permitted to raise new issues here which they did not raise below in their stay application to the District Court. The only issues raised therein were feasibility, joinder, and confusion as to whether the District Courts' Opinion applied to both parties or just Democrats. Therefore, any other argument, including the entirety of their merits arguments on the ballot design statutes' underlying constitutionality, should not be considered. *See Guyton v. PECO Inc.*, 770 Fed. Appx. 623, 626 (3d Cir. 2019) (an appeals court "need not address [a] conclusory, undeveloped accusation. . . . Generally, absent compelling circumstances an appellate court will not consider issues [] raised for the first time on appeal." (cleaned up) (quoting *Ross v. Hotel Employees & Rest. Employees Int'l Union*, 266 F.3d 236, 242 (3d Cir. 2001)).

## II.    APPELLANTS CANNOT DEMONSTRATE THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THE APPEAL

### A.    The federal court's review of the constitutionality of state laws was rightly conducted independently of prior state court rulings.

9

Appellants cannot demonstrate a likelihood of success on the merits by simply relying on stale and misguided state court opinions that discussed the constitutionality of the bracketing and ballot placement laws. The crux of Appellants' argument is that the District Court should have looked to or predicted how state courts would rule on the issue of constitutionality. This misguided assertion is blatantly wrong as a matter of law. The cases they rely on for this proposition, *e.g.*, *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388 (3d Cir. 2012), were diversity cases, and therefore were about an *Erie* guess on state law governing the *state claims* at issue. *See id.* at 390. In stark contrast, here Plaintiffs brought *federal claims* under the United States Constitution, and there can be no doubt that state court interpretations of federal law are not binding on federal courts. *Surrick v. Killion,* 449 F.3d 520, 535 (3d Cir. 2006).

Furthermore, the two cases cited by Appellants are devoid of persuasive value. In *Quaremba v. Allan*, 67 N.J. 1 (1975), a case decided prior to the now-applicable *Anderson-Burdick* test for the First and Fourteenth Amendment claims, the court merely looked to whether the county clerk's actions were "rooted in reason," and did not engage in the now-required careful consideration and weighing of the burdens or state interests that may or may not have been sufficiently weighty to

10

justify the burdens imposed. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (lead opinion).

In *Schundler v. Donovan*, 377 N.J. Super. 339 (App. Div.), *aff'd*, 183 N.J. 383 (2005), the appellate court's opinion misconstrued the Supreme Court's decision, *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989), which struck down California's primary endorsement ban based on associational rights of parties to endorse candidates and govern their internal affairs. *Eu* was decided in the context of the simple, basic right to "endorse" candidates, and had nothing to do with bracketing or exercising associational rights on the ballot itself. Nevertheless, the Appellate Division claimed that *Eu* required, "as a matter of constitutional imperative," that every candidate has an associational right "to declare a ballot affiliation with any other candidate." *Id.* at 348. This extreme expansion of the holding in *Eu* to require bracketing on the ballot is not supported in *Eu*, conflicts with various federal cases recognizing that the ballot itself is not meant to be a forum for candidate expression,[10] and is severely undermined by the fact that *no other*

---

[10]    *See, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 453 n.7 (2008) ("The First Amendment does not give political parties a right to have their nominees designated as such on the ballot."); *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 336 (6th Cir. 2016) (upholding law preventing judicial candidates from appearing on general election ballot with party affiliations because "a political party has no First Amendment right to use the general-election ballot for expressive activities and "has no right to use the ballot itself to educate voters").

*states* organize their primary election ballots the way 19 New Jersey counties do; indeed office block ballots by nature do not allow bracketing.

Furthermore, even with the preliminary injunction, candidates' and parties' associational rights in New Jersey go well above and beyond what other states allow, since they can still affiliate on the ballot via use of a common slogan. *See N.J.S.A.* 19:23-17. Moreover, unlike in *Quaremba* or *Schundler*, here the District Court had before it unrebutted expert reports and expert testimony, and the state's Attorney General, independently concluded that the bracketing and ballot placement system was unconstitutional, taking the rare and extraordinary measure of refusing to defend its constitutionality. (DE149, 172.)

 **B.** **The District Court rightly concluded the challenged statutes violate the Elections Clause and First and Fourteenth Amendments, and Appellants put forth no evidence to demonstrate a likelihood of success on the merits.**

Appellants cannot show a likelihood of success on the merits of the First and Fourteenth Amendment claims, having offered *virtually no proof or evidence* to rebut Plaintiffs' expert reports, testimony, and other evidence or to support alleged state interests. Among other evidence, Plaintiffs' expert, Dr. Julia Sass Rubin, found a consistent double digit advantage between candidates who were featured on the county line compared to opponents who weren't over the last 20 years, which was extremely statistically significant, and consistent with the findings of another expert,

Dr. Josh Pasek, who conducted a survey and analyzed its results in connection with the 2024 primary. Dr. Pasek found, on average, an over-double digit advantage stemming from the primacy effect for candidates when they were listed in the first position on a county line ballot, compared to when those same candidates were listed in later positions, as well as an over-double digit advantage of bracketing, compared to when candidates were not bracketed. The experts found New Jersey's primary ballot system afforded consistent and substantial ballot advantages, which amounted to an "enormous handicap," in favor of party-endorsed candidates, altered election results, and had the ability to change election outcomes. Appellants presented no evidence of their own to rebut Plaintiffs' experts who were rightfully credited by the Court.

Similarly, Appellants presented *virtually no proof or evidence to support* how their outlier bracketing and ballot placement system furthers their alleged state interests, let alone that they are sufficiently weighty to justify substantial, government-conferred ballot advantages to party-endorsed candidates and to further punish unbracketed candidates with additional ballot disadvantages. The District Court correctly noted that any associational interests of political parties to endorse was not being challenged and would remain intact, including the ability to associate on the ballot itself and communicate that association via a common slogan. The District Court also correctly noted that the bracketing and ballot placement system

13

"hampered," rather than promoted, a manageable and understandable ballot and any interest in preventing voter confusion. Indeed, the record is replete with various examples of significant over and under votes based on the design of the ballot, as well as nonsensical ballot affiliations where candidates were placed in the same column as their opponents, or were bracketed with a certain candidate in one county, and then bracketed with that same candidate's opponent in a different county. Appellants do not point to anything to disturb the findings of the District Court, based on an evaluation of the factual record and lack of any evidence presented by Appellants.

Appellants fail to grapple with the fact that Plaintiffs demonstrated a variety of the ways that different candidates are harmed. Indeed, each Plaintiff demonstrated their rights will inevitably be burdened in one or more of the following ways: (1) harm to the electoral prospects of candidates not on the county line and who are not bracketed; (2) additional disadvantages for unbracketed candidates such as (a) separating them with ballot gaps between their opponents or egregiously relegating them to "Ballot Siberia," (b) excluding them from participation in the preferential ballot draw and from obtaining the first or earlier ballot position; and (c) placing them in a column by themselves or stacking them in a column with candidates with whom they do not want to associate; (3) failing to treat similarly situated candidates running for the same office equally; and (4) violating candidates' associational rights

14

by presenting them with a Hobson's choice where they must (a) bracket with candidates with whom they do not want to associate in order to avoid their opponent obtaining an advantage over them, or (b) incur a penalty or cost to exercising their right to not associate[11] by suffering the various electoral harms of candidates who are not on the county line and additional ballot disadvantages of unbracketed candidates.[12]

Importantly, the Elections Clause claim does not even require consideration of burdens and state interests under the *Anderson-Burdick* test. Tellingly, neither Appellants' brief (CCDC nor the 15 County Clerks) so much as mentions the Elections Clause, despite the fact that the District Court found this claim constitutes independent grounds to demonstrate likelihood of success on the merits. The District Court correctly acknowledged longstanding United State Supreme Court precedent holding that state ballot laws violate the Elections Clause of the U.S. Constitution,

---

[11]    A critical component of the freedom to associate is the corresponding right to not associate. *See, e.g.*, *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000).

[12]    Appellants' claim that one Plaintiff, Andy Kim, will be included in a random draw for ballot position, clearly ignores the fact that he will be harmed in other ways, and disregards the fact that two congressional Plaintiffs will not be included in a random draw with their county line opponent, and will be harmed in the various other ways since they will be unbracketed. For similar reasons, the out of circuit cases referenced in the MCRC's amicus brief that dealt only with ballot order, in the context of a general election, and not with the additional ways New Jersey's unique primary election ballot system harms candidates and disadvantages unbracketed candidates, fail to capture both the character and magnitude of the burdens at issue in this case and do not support granting a stay.

15

if they (1) favor/disfavor certain classes of candidates; (2) dictate electoral outcomes; or (3) attach a concrete consequence or penalty on the ballot that interferes with the exercise of free speech and associational rights. *See Cook v. Gralike*, 531 U.S. 510, 523-25 (2001). Having reviewed the record and proofs submitted by Plaintiffs, the District Court found Plaintiffs' evidence sufficient to demonstrate a likelihood of success on the merits that the bracketing and ballot placement system "improperly influenc[es] primary election outcomes by virtue of the layout of the primary ballots," and thus the county clerks thereby exceeded their authority to regulate the manner of a federal election at the critical moment before voters cast their vote. (Opinion, DE194, p. 35 (citing *Cook*, 531 U.S. at 525).)

**III.   APPELLANTS CANNOT DEMONSTRATE IRREPARABLE INJURY IN THE ABSENCE OF A STAY, OR SUBSTANTIAL HARM TO OTHERS, OR THAT THE PUBLIC INTEREST DISFAVORS AN INJUNCTION**

**A.   The district court correctly concluded that its injunction for the 2024 primary could be feasibly implemented by the defendant Clerks and did not violate *Purcell*.**

Initially, Appellants' theories about "voter confusion" were, and remain, entirely in the realm of speculation. Rather than presenting surveys and rigorous analysis in support, the Clerks simply offer an *ipse dixit* that any change in balloting procedures will confuse voters. This condescending assertion of voter ignorance is galling. Voters had no noted difficulties in adapting to multiple changes in election

machinery over the past few years, or to the change in ballot format from county line, to office block, and back again (*e.g.*, DE45). New Jersey voters have already voted, and already vote, on office-block ballots, for example in school board and non-partisan races. And voting technology experts affirmed that office-block ballots are simpler and less confusing for both voters and election officials. In seeking to stay an injunction, arguments belonging to the realm of speculation will not carry the Appellants' burden. Their burden of proving voter confusion must rise above the speculation and guesswork offered here.[13]

Unlike other instances where *Purcell* has been invoked successfully, here the issue of feasibility was prominently before the Court, which had an opportunity to not only receive and review various certifications and multiple rounds of briefing, but also hear the testimony of expert witnesses, and make credibility determinations. The record evidence before the Court was clear on many levels that the various clerks, using the hardware and software they now deploy, already have the capability

---

[13] The only evidence of voter confusion in the record is provided by Plaintiffs' experts regarding the *current* ballot design laws. To the extent *Purcell* generally disfavors late changes to election laws due to confusion, that argument is severely undermined by record evidence demonstrating that *denying* the requested relief would lead to voter confusion. Similarly, to the extent that *Purcell* is concerned with compromising the integrity of the election, Plaintiffs' experts concluded that, under the current system in the absence of injunctive relief, voters would have good grounds to reasonably question whether a candidate would have been the winner of an election but for the advantages of the ballot design, even in instances of double-digit margins of victory.

to print mail ballots, and to prepare electronic ballot interfaces for voting machines, with races presented in office-block ballot displays. There was evidence before the Court that not only *could* they print office block ballot displays, but they *had* printed office-block ballot displays in prior elections. The Clerks offered a slew of excuses and second-hand accounts about the difficulty of holding elections with office-block presentations, but ultimately, these claims, presented through a combination of certifications and live testimony where the judge could make credibility assessments, were unpersuasive to the Court.

On the contrary, the Court credited evidence that of the two dominant voting systems used in New Jersey (which are also used across the country with office-block displays), ES&S and Dominion, each was capable of presenting ballots in office-block format for both mail and in-person voting, and that clerks using each had actually presented elections on ballots that were entirely office-block or a hybrid of office-block and party column ballots. (*See* DE214 (Opposition to Stay Motion), pp. 5-8). The Court also credited expert evidence that changing ballot layouts after the data has already been entered should not take longer than one day. (DE194, p. 42.) The Court was not obligated to credit the clerks' unsubstantiated fears to that effect, especially not in the face of expert evidence that these ballots could easily be designed going forward, and had been used historically. The Court was also right in noting that at least one clerk using Dominion equipment and another using ES&S

18

equipment had withdrawn from the appeal, effectively conceding that any familiar user of these voting systems could comply with the Court's Order. (DE219, Order Denying Stay, p. 2 n.1).[14]

### B.    The relevant date for feasibility analysis is April 20, not April 5.

Appellants repeatedly ask that, for purposes of *Purcell* and feasibility analysis, the Court focus on an April 5 deadline for preparing printer's proofs of ballots. However, April 5 is *not* a date after which no changes to the ballot can be made. (Doc. 10). Rather, Plaintiffs submitted material showing that state courts, applying state law, regularly relax that deadline when necessary to adjudicate claims of improper ballot design or to otherwise protect candidates' rights under N.J.S.A. 19:13-12. *See* DE95, pp. 8-9 (describing and citing DE95-1, Exhs. I to L (providing several examples of Orders by New Jersey state courts interpreting state law and modifying election deadlines accordingly) and *Samson*, *supra.* This evidence, in sum, shows that state courts do not view the printer's proof deadline of April 5 as a firm or inflexible date that precludes granting judicial relief to candidates entitled to it. Rather, the April 20 deadline for mailing out ballots to military and overseas voters is firmer, but even that is not completely fixed. *See id.* Finally, the April 20 date is not even the deadline for settling the display of in-person voting machines;

---

[14]    Nor did the Court find any merit to Defendants' claims that the Plaintiffs had unduly delayed in marshaling their evidence and commencing suit. (DE194, pp. 40-42).

19

as the Monmouth County Clerk testified, that deadline does not come until about a month later. (Tr. 367:1-4, "Typically we try to have the machines ready on or about May 22nd . . ."). This Court must reject Defendants' contentions that April 5, rather than April 20 or shortly thereafter, is the controlling date for purposes of feasibility or *Purcell* analysis.

### C.    The district court's clarification order does impact the analysis

Appellants fail to demonstrate that the District Court's clarification order, limiting the scope of the injunction to the 2024 Democratic primary, warrants a stay. In the application for a stay before the District Court, Appellants raised concerns about confusion amongst clerks as to whether the opinion applied to Republicans. After the District Court clarified that injunctive relief would be limited to Democrats, it removed any concerns of confusion. Nevertheless, Appellants now feign concerns about equal protection, ignoring the fact that county clerks have applied internally and externally inconsistent ballot draw and ballot placement principles across counties and across elections cycles.

In fact, this issue was originally raised by nonparty Morris County Republican Committee ("MCRC") after the District Court issued its Opinion. Ironically, prior to 2021, Democrats in Morris County had county line ballots and Republicans had office block ballots. (DE1, at ¶ 55; DE1-3, p. 21; DE1-1, Exh. A at 46, 47.) No concerns were raised while that system was in place.

Moreover, the Court did not issue final relief, but simply narrowly administered the scope of its injunction. To the extent this Court finds CCDC's new equal protection concerns to be salient, the more appropriate course of action to protect all candidates' constitutional rights would be to heed the judge's direction that "nothing in [the] Order prevents the Republican Party and its leadership from appreciating this Court's preliminary injunction." (DE207.) Should the matter be entertained here, this Court need only stay the clarification order (DE207) rather than staying the entire preliminary injunction (DE195). Indeed, the Order granting preliminary relief is not expressly limited to Democratic Party primaries, and can remain in place without interruption.

## CONCLUSION

The Court should deny all Appellants' motions for a stay pending appeal.

Respectfully submitted,

WEISSMAN & MINTZ                    BROMBERG LAW, LLC
Co-counsel for Plaintiffs           Co-counsel for Plaintiffs

By: /s/ Flavio L. Komuves           By: /s/ Yael Bromberg
By: /s/ Brett M. Pugach

Dated:        April 2, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,171 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, Times New Roman, 14 point font, using Microsoft Word.

3. This motion complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies required by the Court; and Microsofe Defender has been run on the file containing the electronic version of this brief and no viruses have been detected.

4. Pursuant to Local Rule 28.3(c), I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

April 2, 2024                         */s/ Flavio L. Komuves*